

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-31-1996

# Hilfirty v. Shipman

Precedential or Non-Precedential:

Docket 95-7206

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Hilfirty v. Shipman" (1996). *1996 Decisions.* Paper 137.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/137

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

                    UNITED STATES COURT OF APPEALS
                  FOR THE THIRD CIRCUIT


                         No. 95-7206


          JOHN A. HILFIRTY; MARTHA L. MILLER

                            v.

     DAVID C. SHIPMAN; KENNETH R. SCHRINER; BRETT O. FEESE;
          STEPHEN C. SCHOPFER; BETTY A. NOLL

                                 Martha Miller,

                                      Appellant


          Appeal from the United States District Court
            for the Middle District of Pennsylvania
                 (D.C. Civil No. 4:CV-93-1497)


                    Argued January 25, 1996


          Before:  COWEN and SAROKIN, Circuit Judges
     and POLLAK, District Judge
                         (Filed July 31, 1995)


                              Donald A. Bailey (argued)
                              Suite #9
                              845 Sir Thomas Court
                              Olde English Gap
                              Harrisburg, PA  17170

                              Attorney for Appellant

                              Gary L. Weber (argued)
                              Mitchell, Mitchell, Gray
                                   & Gallagher
                              10 West Third Street
                              Williamsport, PA  17701

                              Attorney for Appellee Schriner

                              William A. Hebe (argued)

Spencer, Gleason & Hebe
17 Central Avenue
P.O. Box 507
Wellsboro, PA  16901

Attorney for Appellee Feese

J. David Smith
McCormick, Reeder, Nichols,
    Bahl, Knecht & Person
835 West Fourth Street
P.O. Box 577
Williamsport, PA  17703

Robin A. Read (argued)
McNerney, Page, Vanderlin
    & Hall
433 Market Street
P.O. Box 7
Williamsport, PA  17703

Attorneys for Appellee
    Schopfer

OPINION OF THE COURT

SAROKIN, Circuit Judge.

Plaintiff Martha A. Miller filed a 42 U.S.C.   1983 action for malicious prosecution against numerous defendants after a motion by the state to nolle prosequi her criminal charges was granted.  The motion to nolle prosequi her charges resulted from a compromise between the District Attorney's Office and her common law husband, John Hilfirty, who was arrested with her. Pursuant to this compromise, Hilfirty agreed to enter an Accelerated Rehabilitative Disposition ("ARD") program in exchange for dismissal of the charges against him and for the motion to nolle prosequi the charges against Miller.

The district court reviewing Miller's malicious prosecution claim granted summary judgment in favor of defendants on the ground that Miller failed to make out a prima facie case of malicious prosecution because she was unable to meet the threshold requirement of demonstrating that the criminal charges against her were terminated favorably.

We conclude that a grant of nolle prosequi is insufficient to support a claim of malicious prosecution only in circumstances where the accused herself enters into a compromise with the prosecution in which she surrenders something of value to obtain

the dismissal or where the accused formally accepts the grant of nolle prosequi in exchange for her knowing, voluntary release of any future claims for malicious prosecution. Because we find that Miller neither compromised with the prosecution to obtain her grant of nolle prosequi nor formally accepted the nolle prosequi in exchange for a release of future civil claims, we conclude that the underlying proceeding terminated in her favor for purposes of sustaining a malicious prosecution claim, and accordingly, we reverse as to the dismissal of the malicious prosecution claim.

## I.

John Hilfirty was terminated from his position as a general manager of a recycling center operated by the Lycoming Valley Association for the Deaf (LVAD) on May 7, 1991. His termination followed the deterioration of his relationship with the Chairman of the LVAD Board, Betty Noll, due to a dispute regarding the alleged misuse of some of LVAD's funds. According to the complaint filed by Hilfirty and Miller before the district court, Noll was involved in the mishandling of funds, and she had become frustrated with Hilfirty's refusal to participate in her scheme.

Hilfirty fought against his termination and applied for unemployment compensation, which LVAD contested. Hilfirty alleged that during the course of his unemployment compensation hearing a series of events transpired which led some of the LVAD Board members to participate in a conspiracy with county law enforcement authorities to have criminal charges filed against Hilfirty and Miller, his common law wife, in order to try to ruin Hilfirty's reputation. In particular, Hilfirty claimed that several LVAD Board members supplied false information to the prosecutor's office that Hilfirty had secretly recorded LVAD Board meetings and telephone conversations with LVAD Board members in violation of Pennsylvania's wire-tapping statute. As a result of this information, a search warrant was issued for the premises of the house shared by Hilfirty and Miller. The search warrant identified the items to be searched for and seized to be "[e]lectronical [sic], mechanical, or other device as defined in Pa. Crimes Code 5702 Tape Recordings (Audio or Visual) and transcripts, notes pertaining to illegal intercepts." Appellee Appendix at 13.

In the course of the ensuing search, several items were seized from the house, including cassette tapes, recorders, a small amount of illegal drugs and drug paraphernalia including pipes, bongs, and rolling paper. As a result of this seizure, the District Attorney's Office filed criminal complaints against both Hilfirty and Miller, who were arrested as a result. Hilfirty was charged with five counts of violating the Pennsylvania wire-tapping statute, one count of possession of an electronic device capable of illicitly intercepting verbal communications, one count of criminal conspiracy, one count of possession of a controlled substance, and one count of possession of drug paraphernalia. Miller was charged with one count of criminal conspiracy to intercept oral communications, one count of violation of the Pennsylvania wire-tapping statute, one count

of possession of drug paraphernalia, and one count of possession of a controlled substance.

Hilfirty and Miller were released on their own recognizance, and their cases were consolidated for trial. In the course of preparing for trial, Hilfirty and Miller filed a motion to suppress the evidence seized during the search on the ground that probable cause for issuing the warrant was lacking. Their motion was denied.

In June of 1992, the District Attorney's Office approached Hilfirty's counsel, suggesting that Hilfirty's case be disposed of through the ARD program, whereby the charges against Hilfirty would be dismissed if he agreed to certain terms, including probation for one year, payment of the costs of the prosecution, payment of a $250 administrative fee, payment of the costs of supervision, performance of 32 hours of community service, and the withdrawal of private criminal complaints he had filed against defendants Noll and Shipman. After some negotiations, Hilfirty agreed to enter the ARD program on the condition that the District Attorney's Office would file a motion to nolle prosequi the charges against Miller. Accordingly, Hilfirty signed, and the court approved, a document through which he entered the ARD program. On the same day, the Court of Common Pleas of Lycoming County also separately issued an order granting the Commonwealth's Motion to Nolle Prosequi the charges against Miller. Miller did not sign any documents accepting the grant of nolle prosequi.

According to two affidavits by attorneys from the District Attorney's Office which were presented by defendants to the district court in the instant civil action, counsel for both Hilfirty and Miller were present at these negotiations. Miller presented no evidence to the contrary before the district court, although she asserts on appeal that she neither initiated these negotiations nor participated in any of these discussions herself. Rather, she avers that during these discussions Hilfirty's counsel alone agreed that Hilfirty would be willing to enter the ARD program if a motion to nolle prosequi Miller's charges were granted.

Following the disposition of their criminal case, Hilfirty and Miller filed a civil complaint in federal district court against the following individuals: LVAD Board member David C. Shipman; former LVAD Board member Betty Noll; Lycoming County Detective Kenneth R. Schriner; Lycoming County District Attorney Brett O. Feese; and Stephen C. Schopfer of the Lycoming County Solid Waste Department. Plaintiffs' complaint contained five counts alleging, inter alia, a section 1983 claim based on alleged violations under the First, Fourth, Fifth and Fourteenth Amendments of their right to be free from malicious prosecution, their right to be free from unlawful searches and seizures, their right to their lawful interest in their property and their right not to be falsely arrested without due process of law. Their complaint further alleged claims under section 1983 for conspiracy to deprive plaintiffs of their constitutional rights, as well as claims under section 1986 for failure to prevent a conspiracy and pendent state claims for malicious prosecution and

deprivation of life, liberty and property under the Constitution of the Commonwealth of Pennsylvania.

The five individual defendants in this action responded by filing motions to dismiss. Defendants Shipman and Noll framed their motions to dismiss alternatively as motions for summary judgment. The district court treated all five motions as motions for summary judgment because it accepted and considered material outside of the pleadings, specifically affidavits, in disposing of the motions. It granted summary judgment to defendants on all federal claims and Miller's state malicious prosecution claim and dismissed the other pendent state claims without prejudice.

With the exception of plaintiffs' section 1983 claim of malicious prosecution, the district court found that all of plaintiffs' federal claims were time-barred because the statute of limitations had run. With regard to the malicious prosecution claim, the district court found that neither Hilfirty nor Miller was able to meet the threshold requirement of demonstrating that the underlying proceeding terminated in his/her favor. Hilfirty v. Shipman, No. 93-1497, slip op. at 16 (M.D. Pa. June 3, 1994) (hereinafter "Dist. Ct. Op.").

The only appellant in this matter is Martha Miller, who appeals to this court only from that portion of the district court's judgment regarding her claim for malicious prosecution. The only appellees here are Schriner, Feese and Schopfer.

II.

The district court had jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343(3) & (4) and 42 U.S.C. 1983. This court exercises jurisdiction over this appeal of a final order of the district court pursuant to 28 U.S.C. 1291.

Our review of the district court's order for summary judgment is plenary, and we thus apply the same standards that were applicable in the district court. J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1530 (3d Cir. 1990), cert.denied, 499 U.S. 921 (1991). Summary judgment is appropriately granted when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If, however, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), summary judgment shall not be granted. Miller, as the nonmoving party, is entitled to have all reasonable inferences drawn in her favor. See J.F. Feeser, 909 F.2d at 1531.

III.

The district court issued summary judgment in favor of defendants on the malicious prosecution claim because it determined that Miller was unable to meet the threshold requirement of demonstrating that the criminal action "terminated in a manner 'consistent with innocence, such as acquittal or reversal of conviction.'" Dist. Ct. Op. at 16 (quoting Junod v. Bader, 458 A.2d 251, 253 (Pa. Super. Ct. 1983) (citing Anolik v. Marcovsky, 186 A. 418 (Pa. Super. Ct. 1936))). Specifically, the district court concluded that the "nol prossing of charges as

part of a plea bargain agreement [does not] equat[e] to the termination of the underlying proceedings in plaintiffs' favor." Dist. Ct. Op. at 19. We are required to determine whether the district court was correct in its assessment that there was no genuine issue of material fact regarding whether the underlying proceedings terminated in Miller's favor.

A.

As an initial matter, we will assess whether the district court appropriately converted the 12(b)(6) motions filed by defendants into motions for summary judgment. The district court explained that in reviewing the motions to dismiss, it accepted and considered four affidavits presented by defendants and the affidavit of Hilfirty, attached to plaintiffs' Memorandum of Law and Facts, and that accordingly, it considered all motions as motions for summary judgment. Dist. Ct. Op. at 7 n.19. Federal Rule of Civil Procedure 12(b) provides that if, on a motion to dismiss under Rule 12(b)(6),

> matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(b). Given that the district court accepted and considered documents outside of the pleadings in the course of disposing of defendants' motion, its treatment of these motions as motions for summary judgment was appropriate under the plain terms of the rule. See 5A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure 1366 at 493 (West 1990) (noting that "[o]nce the court decides to accept matters outside the pleading, it must convert the motion to dismiss into one for summary judgment").

Miller argues in her brief before this Court, however, that the "lower court's decision was pre-mature" [sic] and claims that "[d]iscovery should have been allowed." Appellant's Brief at 11. Specifically, Miller contends that, had she had the opportunity to present the district court with more material regarding the circumstances under which the compromise was reached between the prosecution and Hilfirty, it would have been evident to the district court that she did not participate in the compromise and that, therefore, the court's grant of nolle prosequi should be considered to be a termination of the proceedings in her favor.

While she does not clearly define her argument as such, we interpret her claim to be that the district court erred in failing to provide notice that it was treating the motions to dismiss as motions for summary judgment and erred in failing to provide her an opportunity to submit material in support of her position. It is, indeed, well-established that prior to converting a motion to dismiss into a motion for summary judgment, the district court must provide adequate notice to the parties. Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989) ("We have held that it is reversible error for a district court to convert a motion under Rule 12(b)(6) . . . into a motion for

summary judgment unless the court provides notice of its intention to convert and allows an opportunity to submit materials admissible.") (and cases cited therein); 5A Wright & Miller, supra, 1366 at 501 ("It is important that the court give the parties notice of the changed status of the motion and a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56.'"). Certainly, the nonmoving party must have adequate notice and time to present to the district court material relevant to her claim in order to demonstrate that there is a genuine issue of material fact that renders summary disposition of the case inappropriate.

We find in the instant matter that Miller had adequate notice that the court would convert defendants' motions to dismiss into summary judgment motions, as well as adequate opportunity to respond. The primary reason for our conclusion is that two of the five motions to dismiss were framed in the alternative as motions for summary judgment. See Dist. Ct. Op. at 6. This court has previously held that "[w]here a party has filed a motion for summary judgment, the opposing party is under an obligation to respond to that motion in a timely fashion and to place before the court all materials it wishes to have considered when the court rules on the motion." Cowgill v. Raymark Industries, Inc., 780 F.2d 324, 329 (3d Cir. 1985). That the two motions were framed only in the alternative as motions for summary judgment does not alter our conclusion. Miller was on notice that the court was considering two motions for summary judgment, and she had the opportunity to respond over a period of nearly eight months, between the filing of the defendants' motions to dismiss in late October 1993 and the district court's final judgment in June of 1994. Furthermore, neither Miller nor Hilfirty ever objected to defendants' submission of affidavits with their motions, nor did either Miller or Hilfirty make a motion for discovery before the court. Rather, Hilfirty submitted his own affidavit with their brief before the court. Thus, it was appropriate for the district court to treat the motions as ones for summary judgment.

B.

We will now assess the district court's conclusion that Miller failed to meet the threshold requirement for a claim for malicious prosecution.

In order to state a prima facie case for a section 1983 claim of malicious prosecution, the plaintiff must establish the elements of the common law tort as it has developed over time. See Lee v. Mihalich, 847 F.2d 66, 70 (3d Cir. 1988); see alsoMcArdle v. Tronetti, 961 F.2d 1083, 1088 (3d Cir. 1992); Singleton v. City of New York, 632 F.2d 185, 195 (2d Cir. 1980) (collecting cases), cert. denied, 450 U.S. 920 (1981). In Pennsylvania, like most jurisdictions, a party bringing a malicious prosecution claim must demonstrate that (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to

justice. Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993); seealso Lee, 847 F.2d at 69-70.

The resolution of this case rests on an assessment of whether Miller is able to meet the second requirement, i.e. demonstrate that the criminal proceedings below ended in her favor. According to the Restatement (Second) of Torts 659 (1976), which has been relied upon by the Pennsylvania Supreme Court, criminal proceedings are terminated in favor of the accused by

    (a) a discharge by a magistrate at a preliminary
    hearing, or
    (b) the refusal of a grand jury to indict, or
    (c) the formal abandonment of the proceedings by the
    public prosecutor, or
    (d) the quashing of an indictment or information, or
    (e) an acquittal, or
    (f) a final order in favor of the accused by a trial or
    appellate court.
Id., quoted in Haefner, 626 A.2d at 521.

Miller's basic argument is that the prosecution's decision to move for nolle prosequi of her charges amounts to a "formal abandonment of the proceedings by the public prosecutor," and thus the district court should have found that the criminal proceedings had terminated in her favor. In particular, Miller refers us to the Pennsylvania Supreme Court's decision in Haefner, where the court determined that the plaintiff had met the threshold requirement for a malicious prosecution claim after the prosecution "nolle prossed the remaining charges because of insufficient evidence." Haefner, 626 A.2d at 521. The court there noted, "'if the defendant is discharged after abandonment of the charges by the prosecutor, this is sufficient to satisfy the requisite element of prior favorable termination of the criminal action.'" Id. (quoting Woodyatt v. Bank of Old York Road, 182 A.2d 500, 501 (Pa. 1962)).

While Haefner clearly indicates that a grant of nolle prosequi can be sufficient to satisfy the favorable termination requirement for malicious prosecution, not all cases where the prosecutor abandons criminal charges are considered to have terminated favorably. Indeed, the Pennsylvania Supreme Court has previously held that a prosecutor's decision to withdraw criminal charges pursuant to a compromise with the accused is not considered to be a termination sufficiently favorable to support a malicious prosecution claim. See Alianell v. Hoffman, 176 A.2d 207 (Pa. 1935). Haefner, which did not involve a compromise agreement, did not disturb this holding.

    It is indeed well-established at common law that
    [a] termination of criminal proceedings in favor of the
    accused other than by acquittal is not a sufficient
    termination to meet the requirements of a cause of
    action for malicious prosecution if

    (a) the charge is withdrawn or the prosecution
    abandoned pursuant to an agreement of compromise with
    the accused . . . .

Restatement (Second) of Torts 660. While the Pennsylvania Supreme Court has never adopted this section of the Restatement, the Pennsylvania Superior Court has. See Junod v. Bader, 458 A.2d 251, 253-54 (Pa. Super. Ct. 1983) (finding that an ARD termination as a result of a compromise is not sufficient for meeting the threshold test for malicious prosecution and citing to section 660 of the Restatement). Section 660(a) of the Restatement has also been adopted by a multitude of other state courts, see, e.g., Broaddus v. Campbell, 911 S.W. 2d 281, 284 (Ky. Ct. App. 1995); Piper v. Scher, 533 A.2d 974, 976 (N.J. Super. Ct. App. Div. 1987); Joiner v. Benton Community Bank, 411 N.E.2d 229, 232 (Ill. 1980); Robinson v. Fimbel Door Company, 306 A.2d 768, 770 (N.H. 1973), and at least two federal courts of appeals have accepted the general premise that dismissals resulting from a compromise with the prosecution are not "favorable terminations." See Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir. 1994) (holding that dismissal of charges pursuant to a pre-trial diversion agreement with prosecutors is not termination of proceedings in favor of the accused to the extent that it will support a malicious prosecution claim); Singleton, 632 F.2d at 194 (same).

The basic premise for this rule is that, unlike a situation where the prosecution seeks a grant of nolle prosequi "because of insufficient evidence," Haefner, 626 A.2d at 521, dismissal of charges as a result of a compromise is not an indication that the accused is actually innocent of the crimes charged. SeeRestatement (Second) of Torts 660 cmt. c ("[T]he fact of a compromise indicates that the question of [the accused's] guilt or innocence is left open."); Davis v. Chubb/Pacific Indem. Group, 493 F. Supp. 89, 92 (E.D. Pa. 1980) (noting that entry into an ARD program is a compromise that leaves the question of guilt or innocence open). Both the Restatement and case law suggest that only terminations that indicate that the accused is innocent ought to be considered favorable. See Restatement (Second) of Torts 660 cmt. a ("Proceedings are 'terminated in favor of the accused' . . . only when their final disposition is such as to indicate the innocence of the accused."); Taylor, 36 F.3d at 456 (noting that "proceedings are terminated in favor of the accused only when their final disposition indicates that the accused is not guilty") (citing Singleton, 632 F.2d at 193); Jaffe v. Stone, 114 P.2d 335, 338 (Cal. 1941) (holding that "[t]he theory underlying the requirement of favorable termination is that it tends to indicate the innocence of the accused").

The district court relied upon this principle that the withdrawal of charges pursuant to a compromise is not a favorable termination in concluding that Miller was barred from filing a malicious prosecution claim. The court considered the grant of nolle prosequi of Miller's charges to be the result of a compromise and thus concluded that the termination of the underlying proceedings was not sufficiently favorable to sustain Miller's malicious prosecution claim:

The Commonwealth's willingness to nol pros the charges filed against [Miller] were conditioned on Hilfirty's

entry into the ARD program. According to the uncontradicted affidavits of prosecuting attorney Ciampoli and First Assistant District Attorney Kenneth A. Osokow, had Hilfirty not agreed to enter the ARD program, the charges against Miller would not have been dropped. The quid pro quo demanded and received by the Commonwealth deprives the nol pros of its effect and indicates that the nol prossing of the charges against Miller does not equate to, and cannot be considered as, a termination in her favor sufficient to support an action for malicious prosecution.

Dist. Ct. Op. at 18–19.

However, that Miller was a beneficiary of Hilfirty's compromise agreement with the prosecution does not require a finding that she, herself, entered into a compromise. The Restatement specifically contemplates that a termination is not sufficiently favorable to support a claim for malicious prosecution if "the charge is withdrawn . . . pursuant to an agreement of compromise with the accused." Restatement (Second) of Torts, 660 (emphasis added). An accused has entered into a compromise with the prosecution only if she herself offers something in return for the dismissal of her charges –– the equivalent of "consideration" in a contract arrangement. This "consideration" could be, for example, entry into an ARD program such as that entered into by Hilfirty, or an agreement to pay restitution or return property to the victim. This interpretation is consistent with the common understanding of a compromise, where both parties give something up in order to accommodate the agreement, as well as with case law in which compromises have been found to bar malicious prosecution claims. See, e.g., Alianell, 176 A.2d at 207 (finding malicious prosecution claim barred where the prosecution "agreed to withdraw the charges in consideration of a payment of $20 and the return of the goods in question"); Junod, 458 A.2d at 252–53 (finding malicious prosecution claim barred because accused agreed to enter into ARD program and comply with its terms in exchange for dismissal of charges); Taylor, 36 F.3d at 455–56 (finding malicious prosecution claim barred because accused entered into pre-trial diversion agreement, thereby agreeing to enter into program of supervision); Singleton, 632 F.2d at 188, 194 (finding malicious prosecution claim barred because accused consented to an adjournment in contemplation of dismissal, thereby agreeing to enter into a program "not unlike probation" where he is subject to the observation of the prosecution); Broaddus, 911 S.W.2d at 284 (finding malicious prosecution claim barred because "[t]he dismissal was not the unilateral act of the prosecutor; [the accused] gave up something to secure the dismissal of the charges"); but see Tucker v. Duncan, 499 F.2d 963, 964 (4th Cir. 1974) (finding malicious prosecution claim barred simply because prosecution agreed to a nolle prosequi of accused's charges "after his attorney spoke with the prosecutor in a back room").

In the instant case, the compromise that occurred was not between Miller and the prosecution, but rather between Miller's

co-defendant, Hilfirty, and the prosecution.  While Hilfirty offered the "quid pro quo" or "consideration" of entry into the ARD program in exchange for the prosecution not bringing him to trial and agreeing to move for nolle prosequi of Miller's charges, Miller herself offered no "consideration" or "quid pro quo" in exchange for the grant of nolle prosequi.  Thus, we do not find that she herself entered into any compromise with the prosecution indicating that the charges against her terminated favorably.

The district court, however, appears to have concluded that the nolle prosequi of Miller's charges was not a favorable termination because Miller was bound by Hilfirty's compromise.  The district court treated Hilfirty's "quid pro quo" as though it were from Miller as well in finding that "[t]he quid pro quo demanded and received by the Commonwealth deprives the nol pros of its effect and indicates that the nol prossing of the charges against Miller does not equate to . . . a termination in her favor . . . ."  Dist. Ct. Op. at 19.

We thus are left to determine whether a compromise entered into by one party can bind that party's co-defendant such that the co-defendant is deprived of her ability to file a malicious prosecution claim.  This question has been answered affirmatively by one Pennsylvania Superior Court case, Georgiana v. United Mine Workers of America, International Union, 572 A.2d 232, 235 (Pa. Super. 1990).  Although the district court decision did not cite to Georgiana, we will discuss the case in some detail because of its similarities to the instant matter.

In Georgiana a woman and her husband were sued for fraud by the United Mine Workers.  Eventually, the woman entered into a settlement agreement pursuant to which the complaint against her and her husband was dropped.  Id. at 233.  The husband later filed a claim for malicious use of civil process against the United Mine Workers, but the trial court granted a demurrer on the ground that the settlement agreement was effective against both him and his wife and the underlying proceedings thus had not terminated in the husband's favor.  Id.  On appeal, the Pennsylvania Superior Court reversed:  "We cannot agree that the unilateral action of one party in negotiating a settlement necessarily binds another party who did not participate in that settlement, simply because the parties are named defendants in the same suit."  Id. at 235 (emphasis added).  However, the court did allow that "the fact-finder could determine that, even though appellant himself did not negotiate the settlement, his wife acted on his behalf in order to prevent an inquiry into her husband's conduct."  Id.  In support of its conclusion, the court cited to Comment b of   660(a) in the Restatement (Second) of Torts, which reads as follows:

There are two factors common to [indecisive terminations not considered favorable for purposes of malicious prosecution]:  First, the charge is withdrawn for a cause not incompatible with the guilt of the accused or the possibility of obtaining his conviction; second, the withdrawal is at the request or with the consent of the accused or is due to something done by

him or on his behalf for the purpose of preventing a full and fair inquiry into his guilt or innocence.

Id. (emphasis added). The court thus remanded the matter so that a fact-finder could determine whether the wife's settlement of the action should bind her husband, based upon "the particular circumstances surrounding [the] settlement, and not upon the status of the parties." Id.

While our research has revealed no other case from Pennsylvania or any other jurisdiction in which a court has concluded that there may be circumstances in which one party's settlement agreement may bind another, we nonetheless predict that the Pennsylvania Supreme Court would adopt Georgiana's fundamental holding. See Kiewet Eastern Co., Inc. v. L & R Const. Co., Inc., 44 F.3d 1194, 1201 n.16 (3d Cir. 1995) (explaining that, when the Pennsylvania Supreme Court has not spoken on an issue, we look to the decisions of the intermediate Pennsylvania courts). We find no indication in any other Pennsylvania case law that Georgiana would not be followed. SeeWisniewski v. Johns-Manville Corp., 759 F.2d 271, 273-74 (3d Cir. 1985) ("Although lower state court decisions are not controlling on an issue on which the highest court of the state has spoken, federal courts must attribute significant weight to these decisions in the absence of any indication that the highest state court would rule otherwise.").

Having determined that we will follow Georgiana's basic holding, we still are left to enumerate the specific findings that a trial court is required to make in order to conclude that one party is bound by the settlement agreement of her co-defendant such that she is barred from bringing a malicious prosecution claim. Georgiana makes clear only that this determination is to be based upon "the particular circumstances surrounding [the] settlement, and not upon the status of the parties." Georgiana, 572 A.2d at 235. It provides us with no other guidance, however, and we are left to rely upon policy considerations in making this determination.

As a threshold matter, we can envision no scenario in which it would be appropriate for a co-defendant to enter into a settlement agreement on behalf of another party without that party's consent. The contents of a settlement agreement may have profound effects upon an individual's life. Accordingly, we find that a court may determine under Georgiana that a party is bound by her co-defendant's settlement agreement only if it finds that the party has knowingly authorized her co-defendant to serve as her agent in entering the agreement.

We further think that policy considerations suggest that a court may conclude that a party is bound by her co-defendant's settlement agreement only if it finds that she fully understands the consequences of her consent. A court certainly would not accept a plea bargain from a criminal defendant absent a statement from that defendant that he fully understands the terms of the agreement and the consequences of entering the plea. While we recognize that the repercussions of allowing a criminal defendant to enter a guilty plea, perhaps accepting jail time without fully understanding the consequences of his actions, are

undoubtedly greater than those of allowing an accused to relinquish her right to file a malicious prosecution claim, it is nonetheless our view that a maliciously prosecuted individual's right to file a civil action is of significant importance; we are thus loath to allow for a situation where such a right is unknowingly relinquished.

It is, indeed, easy to envision a scenario where such could occur. For example, a wife might agree to allow her husband to represent both of them in negotiations with the prosecution, knowing that she is completely innocent of all alleged charges and fully expecting that her husband will be able to obtain a dismissal of all charges against her. Assuming her husband succeeds in accomplishing this in the course of negotiating his own compromise, she would most likely presume that she had been exonerated of all wrongdoing and would expect that she would be able to pursue a malicious prosecution claim. She would have given up nothing in exchange for the dismissal; no consideration would have been offered that would leave her innocence in doubt and she would have every reason to believe that her proceedings had terminated favorably. Yet, if Georgiana were interpreted to allow the husband's compromise to bind his wife without requiring any inquiry into her understanding of the consequences of the agreement, she would be unable to vindicate her right to be free from malicious prosecution.

Such an outcome is highly undesirable and can be avoided. We thus conclude that, when a co-defendant acting as an authorized agent of another party, say his wife, enters into a compromise that provides for the dismissal of charges against her, she cannot be barred from filing a malicious prosecution claim if she herself offered no consideration in exchange for the dismissal, unless it is clear that she was fully aware that such waiver would be the consequence of allowing her husband to enter into the compromise on her behalf.

These two determinations -- whether a party (1) consented to allow her co-defendant to enter an agreement on her behalf, and (2) whether she was fully aware that by allowing her co-defendant to enter the agreement she would be barred from filing a malicious prosecution claim -- are fact questions. We believe, however, that policy considerations suggest that a jury not be left to make this all-important state-of-mind determination by merely piecing together snippets of evidence regarding the nature of the settlement agreement. As noted above, we believe that the right to file a malicious prosecution claim is a deeply important one. Persons who are unjustly prosecuted may suffer emotional pain, permanent damage to their reputation and real financial costs. Furthermore, it is in the public interest to ensure that persons against whom prosecutions are maliciously filed are provided an opportunity to recover civil damages; such actions protect those persons wrongly prosecuted and deter malicious prosecutions, thereby lending legitimacy to the institution of criminal prosecution.

In order to ensure that no person who may have been subject to malicious prosecution inadvertently or unintentionally waives the right to pursue such claim, we conclude that, in instances

where a party authorizes her co-defendant to enter into a compromise agreement providing for the dismissal of her criminal charges and she offers no consideration in exchange for such dismissal, she will not have been found to have relinquished her right to file a malicious prosecution claim unless it is plain from the record of a hearing in open court or a written release-dismissal agreement that such relinquishment was knowing, intentional and voluntary.

While we recognize that this requirement is not specifically suggested by the language of Georgiana, we think that it is a highly sensible requirement and an outgrowth of that opinion. First, and most importantly, it ensures that individuals consciously consider their options and understand the consequences of their actions before waiving their civil rights. Second, it provides for a bright-line rule, avoiding the need for extensive fact-finding on the part of a jury; either a defendant has agreed to relinquish her rights or she has not. Third, it ensures a meeting of the minds between the prosecution and an accused. If, for example, the prosecution affirmatively seeks to require an accused to relinquish her right to file a civil claim when dismissing the charges against her, such an intention will be plain from the face of the court record or the release-dismissal agreement. Finally, such a requirement imposes no cost or undue burden on the prosecution. Rather, it precludes the need for lengthy inquiries into state of mind or the significance of a dismissal of charges. Indeed, it may well be that such a requirement will limit the number of malicious prosecution cases.

We take care to note that any such in-court waiver or release-dismissal agreement will be valid only if it is voluntary; there is no evidence of prosecutorial misconduct; and the agreement is not offensive to the relevant public interest. See Cain v. Darby Borough, 7 F.3d 377, 380 (3d Cir. 1993) (in banc) (citing Town of Newton v. Rumery, 480 U.S. 386, 398 (1987)). This three-pronged test will ensure that prosecutors do not deliberately seek to avoid liability for themselves or others who wrongfully initiated such proceedings by forcing individuals into a waiver or signing of these agreements. In addition, the test prevents prosecutors from adopting a blanket policy of routinely obtaining in-court waivers or release-dismissal agreements every time they agree to dismiss the charges against one defendant in the course of agreeing to a compromise with a co-defendant; instead, they must make their determinations about whether to seek a waiver or release-dismissal agreement on a case-by-case basis. See id. at 382.

In light of the above analysis, we find that the district court erred in concluding that Miller could be bound by a compromise entered into by her husband such that she was precluded from filing a malicious prosecution claim. Even if defendants' representation that Miller herself sought or accepted the grant of nolle prosequi were true -- facts which are not necessarily indicated by the record -- there is no indication in the form of a release-dismissal agreement with the prosecution or a record of a hearing in open court indicating that she knew that her acceptance of the grant of nolle prosequi, for which she

offered no consideration, would deprive her of her ability to file a malicious prosecution claim. In the absence of a release-dismissal agreement or a waiver reflected in a court record coupled with our earlier conclusion that the grant of nolle prosequi was not the result of a compromise between Miller herself and the prosecution, we conclude that this case is governed by Haefner, 626 A.2d at 521, and that the grant of nolle prosequi is "sufficient to satisfy the requisite element of prior favorable termination of the criminal action." Id. (citation omitted). Accordingly, Miller may pursue her claim for malicious prosecution.

IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment regarding Miller's ability to demonstrate the favorable termination of her underlying criminal proceedings, and we remand this matter to the district court for further proceedings consistent with this opinion.


Hilfirty v. Shipman, No. 95-7206


POLLAK, District Judge, concurring:

In Georgiana v. UMW, 572 A.2d 232 (Pa. Super. 1990), the Pennsylvania Superior Court rejected the proposition "that the unilateral action of one party in negotiating a settlement necessarily binds another party who did not participate in that settlement. . . ." Id. at 235. Today, this court, in an opinion which I join, holds "that, in instances where a party authorizes her co-defendant to enter into a compromise agreement providing for the dismissal of her criminal charges and she offers no consideration in exchange for such dismissal, she will not have been found to have relinquished her right to file a malicious prosecution claim unless it is plain from the record of a hearing in open court or a written release-dismissal agreement that such relinquishment was knowing, intentional and voluntary." Typescript, supra, p. 26. This holding -- which comports with the test generally applicable to waivers of civil rights claims, see W. B. Matula, 67 F.3d 484, 497 (3d Cir. 1995), Cain v. Darby Borough, 7 F.3d 377, 380 (3d Cir. 1993) (in banc) -- is characterized as an "outgrowth" of Georgiana. Typescript, supra, p. 26.

While I accept this court's hospitable reading of Georgiana, and agree that the Pennsylvania Supreme Court, when it has occasion to address the issue, is likely to adopt Georgiana's "fundamental holding," Typescript, supra p. 22, I add these concurring words to make the point that, in the case at bar, even under a narrower reading of Georgiana, a grant of summary judgment against Miller was not warranted.

The narrower reading of Georgiana would place particular weight on the Superior Court's statement "that the question whether one defendant's settlement of an action should bind

another defendant must depend on the particular circumstances surrounding that settlement . . . ."  572 A.2d at 235.  That statement follows the Georgiana court's discussion of section 660 of the Restatement (Second) of Torts, the section which is Georgiana's analytic bedrock.  That section, captioned "Indecisive Termination of Proceedings," provides as follows:

> A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if
>
> (a) the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused; or
>
> (b) the charge is withdrawn or the prosecution abandoned because of misconduct on the part of the accused or in his behalf for the purpose of preventing proper trial; or
>
> (c) the charge is withdrawn or the proceeding abandoned out of mercy requested or accepted by the accused; or
>
> (d) new proceedings for the same offense have been properly instituted and have not been terminated in favor of the accused.

Restatement (Second) of Torts  660 (1977).

Plainly, the "termination of criminal proceedings in favor of" Miller is not covered by clause (b): i.e., there is no hint that the charges against Miller were withdrawn "because of misconduct . . . for the purpose of preventing proper trial." Nor is there any suggestion that either clause (c), relating to "abandon[ment] out of mercy," or clause (d), relating to the institution of new proceedings, had application to Miller.

The only aspect of section 660 that might be inquired into is clause (a), relating to withdrawal of charges "pursuant to an agreement of compromise with the accused."  On the record made below, evidence that Miller entered into an "agreement of compromise" is extremely tenuous.  To be sure, it has been averred that Miller's attorney was present at discussions with the assistant district attorney and with Hilfirty's attorney. The assistant district attorney characterized the result of these discussions as a "joint agreement," under which "the Commonwealth agreed to recommend the ARD program for Mr. Hilfirty and to nolle pros the charges against Ms. Miller."  Ciampoli Affidavit,  6, Appellees' Appendix at 2.  But there is no suggestion that Miller, via her attorney or otherwise, took any sort of active role in these discussions.  To the contrary, it would appear that it was Hilfirty's attorney who, on his client's behalf, entered into a bargain with the Commonwealth Ä namely, that Hilfirty would enter the ARD program and the Commonwealth would drop the charges against Miller.  Moreover, according to the assistant

district attorney, "the Commonwealth would not have agreed to dismiss the charges against Miller if Hilfirty had not agreed to the ARD program." Id. In other words, it appears that the Commonwealth included Miller in the "joint agreement" as an inducement to Hilfirty to accept ARD.

One who acquiesces in an arrangement under which she surrenders nothing does not thereby accept a "compromise," at least not in the sense in which the Restatement means that word. Comment c to section 660 of the Restatement provides an illuminating explanation of the rationale for section 660(a)'s rule that a prosecution that terminates with an agreement of compromise does not terminate favorably. It states: "Although the accused by his acceptance of a compromise does not admit his guilt, the fact of compromise indicates that the question of his guilt or innocence is left open. Having bought peace the accused may not thereafter assert that the proceedings have terminated in his favor." Restatement (Second) of Torts 660 cmt. c (1977). In this case, the most that can be said is that Miller acquiesced in a compromise structured by the Commonwealth and Hilfirty. Since there is no evidence that Miller made any affirmative effort whatsoever to seek out a compromise, she can hardly be thought to have "bought peace." In short, the circumstances of the dismissal of the case against Miller in no way call into question the favorable nature of the termination of Miller's prosecution.

Thus, even if the Pennsylvania Supreme Court were to build on Georgiana more narrowly than we do -- even if, for example, the Pennsylvania Supreme Court were to conclude that a dismissal of criminal charges which was negotiated by a co-defendant might in certain "particular circumstances" bar a suit for malicious prosecution notwithstanding that the would-be plaintiff had not executed a written release-dismissal agreement or stated in open court her intention to relinquish her potential claim -- the particular "particular circumstances" presented on this appeal are not of a sort that could properly operate to bar Miller's suit.

_____