

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-14-2004

# Taylor v. Winters

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1201

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Taylor v. Winters" (2004). *2004 Decisions.* Paper 228.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/228

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-1201

GUY TAYLOR,
Appellant

v.

RICHARD WINTERS;
ROBERT APPLEGARTH;
BOROUGH OF MIDLAND

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. No. 03-cv-0484
District Judge: The Honorable Gary L. Lancaster

_____

Argued September 28, 2004

Before: RENDELL, FUENTES, and SMITH, *Circuit Judges*

(Filed:     October 14, 2004     )

_____

OPINION OF THE COURT
_____

Timothy P. O'Brien (*Argued*)
429 Forbes Avenue
Allegheny Building
Pittsburgh, PA 15219
        *Attorney for Appellant*

John F. McCabe (*Argued*)
Marks, O'Neill, O'Brien, & Courtney
707 Grant Street
3200 Gulf Tower

Pittsburgh, PA 15219
     *Attorney for Appellee*s

SMITH, *Circuit Judge.*

Pursuant to 42 U.S.C. § 1983, Guy Taylor brought a malicious prosecution action against the Borough of Midland, Pennsylvania and Midland police officers Richard Winters and Robert Applegarth. Taylor alleged that the defendants filed criminal charges against him which were not supported by probable cause.

The District Court determined that Taylor did not secure the favorable termination of the criminal charges necessary to allow him to go forward with the malicious prosecution claim, and thus granted summary judgment to the defendants. Because we conclude that the District Court's determination is not supported by the record, we vacate the grant of summary judgment and remand for further proceedings.

I.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and this Court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the grant of summary judgment, and apply the same standard the District Court should have applied. *Farrell v. Planters Lifesavers Co.,* 206 F. 3d 271, 278 (3d Cir. 2000). As Taylor was the nonmoving party, we view the facts in the light most favorable to him and draw all inferences in his favor. *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir. 1992). Summary judgment is appropriate when there is no genuine issue of material fact to be resolved at trial. *Gruenke v. Seip,* 225 F.3d 290, 298 (3d Cir. 2000).

2

On October 1, 2000, as Guy Taylor was walking from his car toward a convenience store, a large dog owned by Robert Wilkinson lunged at Taylor. The dog was tethered and never reached Taylor. Before driving away, Taylor threatened to kill the dog–but not Wilkinson himself–if the dog ever bit him. Wilkinson made a Voluntary Statement of the incident to Officer Winters, including in it that Taylor had threatened to kill both dog and master. Winters dispatched his colleague, Officer Applegarth, to investigate.

Applegarth soon spotted Taylor and signaled Taylor to stop his vehicle. Upon Applegarth's request, Taylor produced his driver's license, but not his vehicle registration. Winters soon arrived on the scene. Taylor maintains that Winters was extremely agitated, and that Winters cursed and shouted racial epithets at Taylor as Winters hauled him from his vehicle. Winters slammed Taylor onto the rear of the vehicle, arrested him, and continued to pepper Taylor with racial slurs. While in a holding cell, Taylor could hear but not see Winters angrily demanding that an unnamed person (presumably Wilkinson) include in a written statement that Taylor had threatened to kill the unnamed person.

The officers contend that Wilkinson's written statement was made before Taylor was stopped and that it provided the probable cause to support the vehicle stop. In this version, Taylor was immediately belligerent, uncooperative, used foul language, and

3

thrust his car door open, nearly striking Winters.  The officers deny that they ever used

racial epithets or that race was a motivating factor in their treatment of Taylor.

Taylor was charged with two misdemeanors: (1) under 18 Pa.C.S.A. § 5503(b),

making terroristic threats to Wilkinson; and (2) under 18 Pa.C.S.A. § 2706(a), disorderly

conduct stemming from his roadside interaction with the officers.  Though he produced

his driver's license but not his vehicle registration, and though neither the Police Criminal

Complaint nor the Information charged Taylor with the offense, on April 30, 2001, Taylor

pled guilty to the summary offense of failing to carry and exhibit his driver's license on

demand.  For this offense, the Court of Common Pleas of Beaver County sentenced

Taylor to pay $25 plus costs.

Taylor's complaint avers, and the defendants' answer admits, that the

misdemeanors were dismissed "on or about" April 12, 2001.  In his affidavit, Taylor's

criminal lawyer, Richard P. Joyce,[1] states that the "criminal charges were dismissed by an

Order of Court dated April 12, 2001," and that at that time Taylor pled guilty to the

summary offense.[2]

---

[1] We note that Joyce's affidavit was submitted on Taylor's Motion for Reconsideration
of the District Court's grant of summary judgment.  Because we find that the defendants
below, as the moving party, did not meet their initial burden of showing that their was no
genuine issue of material fact, Fed. R. Civ. P. 56(e), we need not address the timing of
Joyce's affidavit.

[2] It is unclear whether any court action related to this case occurred on April 12, 2001.
The record contains no court document from that date; nor does it contain any record of
the misdemeanors being dismissed.  Whether the April 12th date in the complaint was a
typographical error carelessly repeated by defense counsel and by Joyce, and whether any

4

Taylor and the defendants agree that the criminal proceedings concerning the events of October 1, 2000, have concluded, but the record is silent regarding the particular disposition of the misdemeanors. That is, it is unclear from the record whether Taylor's guilty plea to the summary offense was exchanged as part of a plea bargain for dismissing the more serious charges, or whether Taylor's guilty plea was separate and apart from the decision to terminate the prosecution of the two misdemeanors.

The defendants claim, without record evidence, that "[i]n response to [the misdemeanor charges], Mr. Taylor agreed to plead guilty to the summary offense of carrying and exhibiting a driver's license on demand, ending the criminal proceedings unfavorably for Mr. Guy Taylor." Conversely, Taylor's criminal trial lawyer avers by affidavit that Taylor refused various plea bargain offers, that Taylor's plea of guilty to the summary offense was not part of a plea bargain, and that the "commonwealth made an independent determination to not continue with the prosecution of Mr. Taylor for Terroristic Threats and Disorderly Conduct."

### III.

Taylor, who is African-American, instituted this malicious prosecution action on April 8, 2003, contending that the criminal charges were filed on account of Taylor's race and/or in retaliation for protected speech made by him, in violation of his constitutional

---

documentation exists of the disposition of the misdemeanors, are two of the several factual questions to be addressed on remand. Adding to the uncertainty, defense counsel asserted during oral argument that the admission to the April 12th date was in error.

rights under the First, Fourth, and Fourteenth Amendments. The District Court granted

the defendants' motion for summary judgment, noting that it was undisputed that Taylor

pled guilty to the summary offense of failing to carry and exhibit a driver's license on

demand, and so "[t]herefore, the case did not end favorably for plaintiff and he cannot

establish a claim for malicious prosecution." Dist. Op. at 3. Tellingly, the District Court

wrote, "The record is unclear as to the disposition of the disorderly conduct and resisting

arrest charges. We assume they were dropped as part of a plea agreement. But it does

not change the analysis." *Id.* n.1.

Contrary to the District Court's statement, however, whether the misdemeanor

charges against Taylor were part of a plea agreement does change the analysis.

> To prove a malicious prosecution action under
> 42 U.S.C. § 1983, a plaintiff must show that: (1)
> the defendants initiated a criminal proceeding;
> (2) *the criminal proceeding ended in plaintiff's
> favor*; (3) the proceeding was initiated without
> probable cause; (4) the defendants acted
> maliciously or for a purpose other than bringing
> the plaintiff to justice; and (5) the plaintiff
> suffered deprivation of liberty consistent with
> the concept of seizure as a consequence of a
> legal proceeding.

*Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003) (emphasis added).

Under Pennsylvania law, and according to the *Restatement (Second) of Torts* §

659 (1976), which the Pennsylvania Supreme Court has adopted in this context, criminal

proceedings are terminated in favor of the accused by

6

(a) a discharge by a magistrate at a preliminary hearing; or
(b) the refusal of a grand jury to indict; or
(c) the formal abandonment of the proceedings by the public prosecutor; or
(d) the quashing of an indictment or information; or
(e) an acquittal; or
(f) a final order in favor of the accused by a trial or appellate court.

*Hilfirty v. Shipman,* 91 F.3d 573, 579 (3d Cir. 1996) (citing *Haefner v. Burkey,* 626 A.2d 519, 521 (Pa. 1993).

The Pennsylvania Supreme Court in *Haefner* noted that "if the defendant is discharged after abandonment of the charges by the prosecutor, this is sufficient to satisfy the requisite element of prior favorable termination of the criminal action." 626 A.2d at 521. However, if the prosecutor drops the charges as part of a compromise with the accused, the accused will fail the favorable termination prong necessary to maintain a malicious prosecution claim under § 1983. *Hilfirty,* 91 F.3d at 580 ("Indeed, the Pennsylvania Supreme Court has previously held that a prosecutor's decision to withdraw criminal charges pursuant to a compromise with the accused is not considered to be a termination sufficiently favorable to support a malicious prosecution claim.") (citing *Alianell v. Hoffman,* 176 A. 207 (1935)). *Alianell*'s simple rule has withstood the test of time.

We realize that as a practical matter, documentary evidence to establish the nature of the termination of Taylor's prosecution–whether by compromise agreement or by

unilateral abandonment by the prosecutor–may be lacking. Plea agreements are not always reduced to writing and court reporters are not always available to transcribe what on their surface appear to be routine adjudications. Further complicating the inquiry, the event in question occurred over three years ago, and memories of it may have faded. Be that as it may, on the record before us, we cannot conclude that no genuine issue of material fact exists which would warrant granting summary judgment.

For the forgoing reasons, we will vacate the judgment of the District Court and remand this action for further proceedings consistent with this opinion.