NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1952
_____

ALBERT DAVIS,
             Appellant

v.

PHELAN HALLINAN & DIAMOND PC;
JOHN DOES I-X
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 1-15-cv-03621)
District Judge:  Honorable Robert B. Kugler
_____

ARGUED
March 20, 2017

Before:  AMBRO, JORDAN, and ROTH, *Circuit Judges*.

(Filed: April 24, 2017)
_____

Adam Deutsch   [ARGUED]
Northeast Law Group LLC
P.O. Box 60717
Longmeadow, MA 01106
      *Counsel for Appellant*

Kenneth S. Goodkind   [ARGUED]
Flaster Greenberg
1810 Chapel Avenue West
Cherry Hill, NJ   08002

Scott C. Oberlander
Flaster Greenberg
1835 Market Street
Philadelphia, PA   19103
  *Counsel for Appellee*

——————————

OPINION[*]

——————————

JORDAN, *Circuit Judge*.

 Albert Davis argues that a law firm, Phelan Hallinan & Diamond PC ("Phelan"), violated two separate provisions of the Fair Debt Collection Practices Act ("FDCPA") when it mailed letters relating to a debt owed by Davis to addresses that he claims have nothing to do with him.  According to Davis, those letters violated the FDCPA in two ways: first, they were communications with third parties, and, second, the natural consequence of the letters was to harass, abuse, or oppress him.  Phelan moved to dismiss the claims, or, in the alternative, for summary judgment.  The District Court converted the motion into one for summary judgment and granted it as to both claims.  We agree, and, for the reasons that follow, will affirm.

## I. Factual Background

 Davis owns real property located at 14 Rionda Court, Alpine, New Jersey, which is his primary residence.  In December 2006, he executed a promissory note with Wells Fargo Bank in the amount of $769,000 secured by a mortgage on the property.  Davis's wife, Barbara Davis, was likewise a signatory on that mortgage.  Davis defaulted on the

———————————————

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

loan.  The promissory note and mortgage were subsequently transferred to Bank of America in 2010.  Then, years later, Bank of America retained Phelan to pursue a debt foreclosure action against Davis.

Phelan filed the foreclosure action in New Jersey state court, and it is still being litigated.  During the course of discovery in that action, Phelan mistakenly turned over two "Notice of Intention to Foreclose" (NOI) letters that had been sent to Davis at addresses other than the address that was the subject of the mortgage.  More specifically, those letters were sent by both certified and regular mail to Albert E. Davis at 15 Linda Ave., Brockton, Massachusetts ("the Brockton address"), and 14 Carlson Court, Closter, New Jersey ("the Closter address").  The NOI letters state that they are an attempt to collect a debt against him, that he had been in default on his mortgage since January 1, 2010, that he owed a total of $267,798.26, and that, if he did not pay within thirty days, foreclosure proceedings would be initiated.

Davis then filed this suit against Phelan for violations of the FDCPA based on the NOIs sent to the Brockton and Closter addresses.  Phelan moved to dismiss the Complaint and attached multiple documents, including a declaration by a partner at the law firm.  That declaration explains the process Phelan used to ascertain the addresses to which NOIs should be sent under New Jersey law.  Phelan hired an investigation agency, Full Spectrum Services, Inc. ("Full Spectrum"), to determine the addresses of potential foreclosure defendants who were entitled to receive notice under New Jersey procedural rules and the state's Fair Foreclosure Act.  With Full Spectrum's assistance, Phelan searched for addresses for both Davis and his wife.  That search uncovered the Closter

3

and Brockton addresses. Full Spectrum then consulted multiple databases before it conducted a Freedom of Information Act request to confirm the Closter and Brockton addresses it had found.

The United States Postal Service responded to the confirmation request, and that response is attached to a declaration of one of Phelan's attorneys. It shows that the Closter address is valid for a "Barbara Davis" but that an "Albert Davis" had "moved, [and] left no forwarding address." (App. at 50a.) For the Brockton address, the response showed that there actually was "no such address." (App. at 49a.) Nevertheless, according to Phelan, "to better assure that the NOI would reach Mr. Davis, [Phelan] sent [NOI letters] addressed to Albert Davis to several addresses, including the Property address in Alpine NJ and the addresses in Closter NJ and Brockton MA." (App. at 46a.) The certified mail was returned unclaimed from the Closter address and returned as undeliverable from the Brockton address. There is no allegation that the NOIs sent by regular mail were ever received or opened by any third party.

## II.    Procedural Background

Davis alleged in his Complaint two separate violations of the FDCPA: first, that Phelan violated 15 U.S.C. § 1692c(b), which prohibits "Communication with Third Parties," and, second, that Phelan violated 15 U.S.C. § 1692d, which prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." As already noted, Phelan moved to dismiss and, in doing, attached exhibits to its motion. It requested that, if the exhibits were necessary to the District Court's resolution, "the Court convert th[e] Motion to a Motion

4

for Summary Judgment" as authorized by Federal Rule of Civil Procedure 12(d).  (*Davis v. Phelan Hallinan & Diamond PC*, 15-cv-03621, D.I. 5, pg. 8.)  Davis opposed the motion on the merits.  In his brief in opposition, he included an argument heading stating, in part, that "THE COURT MUST USE THE SUMMARY JUDGMENT STANDARD IN LIGHT OF DEFENDANT'S EXPANDING RECORD."  (*Id.* at D.I. 7, pg. 7.)  He reiterated the point by saying that "[t]he submission by Phelan [of additional documents] may require the motion before the Court to be converted to a Summary Judgment motion."  (*Id.* at D.I. 7, pg. 9.)  Ultimately, the District Court did convert Phelan's motion into one for summary judgment.  After recognizing that Davis himself had argued that the Court must use the summary judgment standard, the Court concluded that "Plaintiff had notice that the Court may treat Defendant's motion as one for summary judgment." (App. at 6a.)  It then granted the motion "pursuant to Federal Rule of Civil Procedure 56" as to both of Davis's FDCPA claims.  (App. at 3a.)

This timely appeal followed.

## III.    Discussion[1]

### A.    Conversion

We must first decide whether the District Court erred in converting Phelan's motion to dismiss into one for summary judgment.  "When reviewing a District Court's decision to convert a motion to dismiss into a motion for summary judgment, we typically examine three issues: first, whether the materials submitted require conversion;

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331.  We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

5

second, whether the parties had adequate notice of the district court's intention to convert; and third, if the parties did not have notice, whether the court's failure to provide notice was harmless error." *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999). Only the second factor is in any real dispute here. As to that factor, we do not necessarily require that district courts themselves give notice of conversion, although that is preferable. What is required is that the parties have adequate notice. *Id.* at 287-88. Because Davis demonstrated that he knew materials beyond the pleadings were before the Court and he indeed urged the District Court to treat the motion to dismiss as one for summary judgment, it is clear that he had the requisite notice of the conversion. Moreover, Davis did not present any objection to conversion or request discovery. It was thus appropriate under the circumstances for the District Court to treat the motion to dismiss as a motion for summary judgment. *Hilfirty v. Shipman*, 91 F.3d 573, 579 (3d Cir. 1996) *overruled on other grounds Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000). Consequently, we will review the District Court's grant of summary judgment de novo and apply the same standard that it applied. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In doing so, "we view the underlying facts and all reasonable inferences therefrom in the light most favorable to [Plaintiff]." *Id.* (quotation omitted).

## B. Communication with a Third Party

Davis argues that the District Court erred in granting summary judgment against him on his claim brought under 15 U.S.C. § 1692c(b) because the NOIs sent to the Closter and Brockton addresses were in fact communications with third parties. Section

1692b(c) prohibits "communication with third parties." 15 U.S.C. § 1692c(b). Here, two letters were sent by regular mail[2] addressed specifically to Albert E. Davis but they were sent to addresses with which he claims no association. There is no allegation, however, that any third party ever received or opened those letters.[3] The question, then, is whether a letter addressed specifically to the debtor but sent to an address other than the debtor's is, on those facts alone, a communication with a third party in violation of the statute.

Section 1692c(b) states that "a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer … ." *Id.* Importantly, the prohibition is only against communication "*with* third parties." *Id.* (emphasis added). A communication must occur with a person other than the consumer in order to be prohibited by the language of the statute. In addition to the statutory language requiring that the communication be "with third parties," the statutory definition of "communication" further supports that requirement. A "communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). That definition explicitly requires that information about a debt be conveyed "to any person." *Id.* Thus, the language of the statutory prohibition and the definition of "communication" both indicate that, without a third party with which to communicate, there is no statutory violation under § 1692c(b).

---

[2] The letters sent by certified mail were returned and therefore are not at issue.

[3] Davis also argued that the Court should presume that the mailings were received based on a New Jersey Rule of Court 1:5-4(b), which provides that "service by mail … shall be complete upon mailing of the ordinary mail." Because that state rule of procedure is relevant only to service of process, it does not affect our analysis here.

District courts across the country have held that letters addressed specifically to a debtor but mailed to the address of a third party do not violate the FDCPA's prohibition on communications with third parties.[4]  That includes district courts within our Circuit. *See, Strouse v. Enhanced Recovery Co., LLC*, 956 F. Supp. 2d 627, 635 (E.D. Pa. 2013) (dismissing claim under § 1692c(b) where letters were sent to debtor's parents' house but addressed only to debtor or her counsel); *cf. Moore v. Fein, Such, Kahn & Shepard, P.C.*, 12-cv-1157, 2012 WL 3945539, at *3 (D.N.J. June 13, 2012) (noting one basis for dismissal was because a letter sent to debtor's father's house but addressed only to debtor did not give any indication it concerned a debt).[5]  We agree; a letter addressed specifically to the debtor does not communicate with a third party, even if it is mailed to the address of a third party.  That is because a letter in an envelope addressed only to the debtor does not convey information "to any person" other than the debtor.  15 U.S.C.

---

[4] *See, e.g.*, *Wisdom v. Wakefield & Assocs., Inc.*, 2:16-cv-00303-DB, 2016 WL 3747586, at *3 (D. Utah July 11, 2016) (dismissing claim where debt collector sent letter to debtor at father's address and father opened debtor's mail because no allegation debt collector addressed letter to father or that the two shared the same name); *Darden v. Trans Union, LLC*, 6:12-cv-297, 2013 WL 12125739, at *3 (E.D. Tex. Oct. 28, 2013) (granting summary judgment because "though sent to an incorrect location, the letter was specifically addressed to [plaintiff] and should not have been opened by anyone else"); *Segal v. Nat'l Action Fin. Servs., Inc.*, 8:04-cv-2388, 2006 WL 449176, at *7 (M.D. Fla. Feb. 22, 2006) ("The act of sending one letter addressed to a consumer but sent to the wrong address does not alone appear to indicate a violation by Defendant of § 692c(b).").

[5] Most recently, the Southern District of New York relied on the opinions from our district courts to conclude that a letter addressed to the debtor, but sent to the address of a third party, generally will not violate the FDCPA.  *Duran v. Midland Credit Mgmt., Inc.*, 15-cv-5940, 2016 WL 3661538, at *3 (S.D.N.Y. June 30, 2016).  In so concluding, that court reasoned that calling such a letter a communication with a third party would be the equivalent of claiming "that the Nazis 'communicated with' the Allies when the Allies cracked the Enigma code" or "that John Gotti 'communicated with' the law enforcement agents who were listening to his phone calls via wiretap[.]"  *Id.*

§ 1692a(2). It is simply not a "communication *with* a third party" as required by the statute. *Id.* at § 1692c(b) (emphasis added). Therefore, Davis's claim under § 1692c(b) cannot stand.

### C. Natural Consequence to Harass, Oppress, Abuse

Davis also argues that the District Court erred in granting summary judgment against him on his claim brought under 15 U.S.C. § 1692d. That section of the statute prohibits a debt collector from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute then provides a non-exclusive list of the types of conduct that violate the statute, including:

> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title.
> (4) The advertisement for sale of any debt to coerce payment of the debt.
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

*Id.* Although that list does not strictly limit the general application of the prohibition, it illustrates the level of culpability required to violate § 1692d.

Davis contends that sending NOIs by certified and regular mail to two addresses that are not affiliated with him is conduct so extreme that the natural consequence of it is to abuse, harass, or oppress. He attempts to liken the mailings to the publication of a list

9

of consumers who allegedly refuse to pay debts. But that analogy is plainly without merit. Unlike a published list of debtors for all the public to see, here, a sealed envelope addressed only to Davis was sent to only two addresses. Furthermore, the NOIs were sent in an effort to comply with the requirement of the New Jersey Fair Foreclosure Act that such notices be sent to "the debtor's last known address, and, if different, to the address of the property which is the subject of the residential mortgage." N.J.S.A. 2A:50-56(b). There is no guarantee that a debtor's last known address will always be his or her current address. Thus, to hold that mailing an NOI to an address that is no longer associated with the debtor, even when addressed only to the debtor, violates the FDCPA could create unnecessary difficulties for debt collectors attempting to provide notice to debtors. And, in any event, the natural consequence of mailing sealed envelopes addressed to a debtor at two addresses that are not his own is not to abuse, harass, or oppress that debtor. Accordingly, Phelan's actions did not violate § 1692d.

## IV.    Conclusion

For the foregoing reasons, we will affirm.

10