NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
_____

No. 08-2168
_____


PAMELA A. COUDEN; TIFFANY A. COUDEN;
ADAM R. COUDEN, a minor, by his next friend Pamela A. Couden;
NICHOLAS M. COUDEN, a minor, by his next friend, Pamela A. Couden;
JORDAN T. COUDEN, a minor, by his next friend, Pamela A. Couden;
LUKE J. COUDEN, a minor  by his next friend, Pamela A. Couden;
MICAH J. COUDEN, a minor by his next friend, Pamela A. Couden,
Appellants

v.

SCOTT DUFFEY; JAMES C. ARMSTRONG; JAY FREEBERY;
LIAM SULLIVAN; TWO UNKNOWN NAMED AGENTS
OF THE FEDERAL BUREAU OF INVESTIGATION; NEW CASTLE COUNTY;
NEW CASTLE POLICE DEPARTMENT; CITY OF WILMINGTON;
CITY OF WILMINGTON DEPARTMENT OF POLICE;
UNITED STATES OF AMERICA

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-03-cv-00369)
Magistrate Judge:  Honorable Mary Pat Thynge
_____

Argued December 13, 2010

Before: SLOVITER, GREENAWAY, JR., and STAPLETON, Circuit Judges.

(Filed:  January 7, 2011)
_____

William D. Fletcher, Jr.
Noel E. Primos     (Argued)
Schmittinger & Rodriguez

Dover, DE 19903

Attorneys for Appellants

Michele D. Allen  (Argued)
Richard R. Wier, Jr.
Wilmington, DE 19806

Judith A. Hildick
New Castle County Law Department
New Castle, DE 19720

Seth M. Beausang
David C. Weiss
Office of United States Attorney
Wilmington, DE 19899

Rosamaria Tassone-DiNardo
City of Wilmington

Attorneys for Appellees

_____

OPINION
_____

SLOVITER, *Circuit Judge*.

This is the second time this case has been before this court. The action was brought by Pamela Couden and her six children pursuant to 42 U.S.C. § 1983, against New Castle County police officers Jay Freebery and James Armstrong and others alleging defendants violated their Fourth Amendment rights. The District Court Judge granted summary judgment in favor of all defendants. *Couden v. Duffey*, 305 F. Supp. 2d 379 (D. Del. 2004). On the first appeal, we reversed the entry of summary judgment in favor of Freebery and Armstrong, holding that the District Court did not view the facts in

the light most favorable to the plaintiffs as required. *Couden v. Duffey*, 446 F.3d 483 (3d Cir. 2006).

After further discovery, Freebery and Armstrong again moved for summary judgment. The matter came before a Magistrate Judge who denied summary judgment as to the claim that Armstrong unconstitutionally seized Pamela and her four youngest children while in their vehicle and Adam Couden's claim that Armstrong and two other officers used excessive force to arrest him. *Couden v. Duffey*, 533 F. Supp. 2d 490 (D. Del. 2008). However, the District Court granted summary judgment as to the claim that Freebery used excessive force when he threw his flashlight through the front passenger side-door window of the Coudens' car and Adam's claim that Freebery facilitated the use of excessive force against Adam by "restrain[ing]" Tiffany Couden (who was in the house) while other officers arrested Adam.[1] The Coudens appeal.

## I.

Viewed in the light most favorable to the plaintiff-appellants, the record supports the following facts. At around 8:00 in the evening on April 12, 2001, Officers Armstrong and Freebery were parked in an unmarked vehicle on the corner of Sanford Drive and Argyle Drive, Newark, Delaware, staking out the home located at 7 Sanford, three houses down from the corner. While parked, they observed a car pull up to the sideyard of the corner home, 3 Sanford. A male wearing an orange sweatshirt exited the car and walked

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. The Magistrate Judge certified the case pursuant to Fed. R. Civ. P. 54(b), and stayed the claims against defendants other than Freebery pending this appeal.

across the sideyard to the backyard where he entered the garage of 3 Sanford. After a few minutes, the car pulled into the driveway with its lights on and sounded its horn. Armstrong and Freebery, dressed in street clothes, then exited their vehicle. Freebery went to the backyard. Armstrong approached the car with his gun drawn as it sat running in the driveway.

The car was being driven by Pamela Couden and the backseat was occupied by her four youngest children, Nicholas, 11, Jordan, 9, Luke, 7, and Micah, 4. The person who had exited the car to enter the garage was Adam Couden, Pamela's 14 year old son. The Coudens were the residents of 3 Sanford.

Once Pamela noticed the man approaching her car through her yard, she asked her children if they recognized him. They did not. She then noticed that he had a gun and stated as much, causing her children to scream in alarm. Officer Armstrong never showed his badge and once he reached the car attempted to open the locked front driver side door. Frightened, Pamela first put her car in neutral before successfully putting it into drive. She then steered to the left to avoid going straight into the garage and drove into the sideyard. She then veered to the right in order to avoid a tree and exited, unobstructed, onto Argyle Drive. While Pamela was driving through the sideyard, Freebery ran from the backyard towards the car with his gun drawn and threw his flashlight through the front passenger side-door window, shattering the glass and causing minor injuries to some of the occupants.

The precise location and trajectory of both Freebery and the car are disputed and serve as the focal point of the current appeal as these facts will determine whether

4

Freebery was in any immediate danger and accordingly whether his decision to throw the flashlight was an objectively reasonable one.

At his deposition, Freebery described the vehicle as traveling at a "high rate of speed" and claimed that he threw the flashlight "in an attempt to stop [the car] and in an attempt to get the hell out of the way." App. at 183-84. Armstrong described the vehicle as driving "erratically," but testified that at no point did he see Freebery in front of the vehicle. App. at 218. Instead, he stated that he saw Freebery to the side of the vehicle.

Micah, the youngest of Couden's children, described the car as swerving to avoid a tree, but specifically denied that Freebery was in front of the car, instead testifying that Freebery was to the right of the car. Jordan similarly testified that Freebery "was off towards the right." App. at 285. Nicholas testified that Freebery was running at the car from the backyard, that Pamela was not driving in Freebery's direction, and that he saw Freebery on the right out of the front passenger window about 10 or 15 feet away from the car.

Pamela testified that once she got the car in drive her "foot was all the way to the floor." App. at 357. She also testified that she swerved left to avoid the garage, and then swerved again (presumably to the right) to avoid the tree that sat in the front of the sideyard. She testified that after she swerved to avoid the tree, she could see Freebery "charging" toward the vehicle from the side, "[b]ut he didn't get close," and was "several feet away" as she went past him just before the glass shattered. App. at 357.

Freebery's supervisor, Lt. Quinton Watson, disciplined Freebery for throwing the flashlight. The written "record of discipline" describes Freebery moving out of the way

5

of the vehicle and then throwing his flashlight "as [the car] passed him in an attempt to 'stop' the fleeing vehicle." App. at 107. The report concludes that "[t]his type of force was deemed unreasonable and the use of Freebery's flashlight in this situation unjustifiable." *Id.* When asked why he deemed the use of the flashlight unreasonable, Watson testified that the flashlight could injure the occupants, distract the driver, and cause the vehicle to career "out of control." App. at 409.

## II.

We exercise plenary review over a district court's order granting summary judgment, applying the same test as the district court to determine if there are any issues of material fact. *See* Fed. R. Civ. P. 56; *Kach v. Hose*, 589 F.3d 626, 633-34 (3d Cir. 2009). The appellants, as the non-moving parties on summary judgment, are entitled to every favorable inference that can be drawn from the record. *Kach*, 589 F.3d at 633-34.

## III.

Freebery claims that his decision to throw the flashlight, undisputedly a use of force and a seizure under the Fourth Amendment, is protected by qualified immunity. The Fourth Amendment provides that "[t]he right of people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated." We have explained that qualified immunity involves two questions. First, as relevant here, whether the facts, viewed in the light most favorable to the Coudens, show that Freebery's conduct violated a constitutional right, or, as we previously rephrased the inquiry: whether Freebery's "actions [and beliefs were] objectively reasonable in light of the facts and circumstances confronting him." *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002) (quotations

6

omitted).  In evaluating whether Freebery's use of force was proportional in light of the totality of the circumstances, the issue raised here is whether the Coudens posed an immediate threat to the safety of the officer or others.  *See Abraham v. Raso*, 183 F.3d 279, 289-92 (3d Cir. 1999).  As the District Court suggested, the most salient "factor [in this case] is whether the [automobile driven by Pamela] pose[d] an immediate threat to the safety of Freebery or others."  *Couden*, 533 F. Supp. 2d at 501.

In attempting to view the facts in the light most favorable to the appellants, the District Court stated that it would "assume that the car was not coming directly at Freebery; rather, that Freebery was to the side of the vehicle."  *Id.*  But when it applied the facts, the District Court emphasized that the car was traveling erratically and "coming in [Freebery's] general direction."  *Id.* at 502.  In its oral ruling denying appellants' motion for reargument, the District Court, cutting a very fine line, insisted that it assumed Freebery was not directly in front of the vehicle, but nevertheless concluded that he was "within a zone of danger."  App. at 48.  The District Court also characterized Freebery's movement toward the vehicle as being part of his investigative duties.  Consequently, the District Court reasoned, "Freeberry threw his flashlight at the vehicle – a reflexive reaction – to prevent the car from hitting him."  *Couden*, 533 F. Supp. 2d at 502.

Pamela's own testimony supports a conclusion that she was driving quickly and swerved twice.  But by extrapolating from her testimony that her entire path was erratic and that Freebery was in the "zone of danger," the District Court made inferences against the plaintiff-appellants, rather than in their favor.  Pamela's testimony, if credited, establishes that when she finished swerving to avoid the tree, Freebery was still at her

7

right, and therefore arguably out of danger. Indeed, although a crystal clear picture of what occurred is difficult to ascertain, the gestalt of the Coudens' testimony is consistent and relatively plain: Freebery was some distance to the side of the car, ran toward it, and then threw his flashlight. A jury would be entitled to credit this testimony which is supported by the undisputed fact that the flashlight went through the front passenger side-door window, not the windshield.

The District Court also failed to properly consider the disciplinary report of Lt. Watson because it deemed that the report and Watson's subsequent testimony were irrelevant "legal conclusions." App. at 49.[2] However, Watson's written description of the events, which was signed by Freebery, contains relevant factual evidence apart from any of Watson's conclusions. Most notably, Watson's report states that Freebery threw the flashlight in an effort to stop the fleeing vehicle after he was already out of the vehicle's way, indicating that Freebery did not throw the flashlight for his own defense.

When properly viewed in the light most favorable to the plaintiff-appellants, the facts would permit a jury to conclude that Freebery was not in imminent danger and that his decision to throw the flashlight, an undisputedly highly dangerous activity that could have wreaked significant, lethal damage, was unreasonable, violating the Coudens' rights

---

[2] The Supreme Court has held that local police enforcement practices and regulations may not be relied on as evidence of whether a seizure was objectively reasonable under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 815-16 (1996). Accordingly, to the extent that Watson's report deems Freebery's actions as unreasonable based on violation of local procedures, it has no bearing on reasonableness under the Fourth Amendment.

8

under the Fourth Amendment.[3]  The Supreme Court has held that absent an immediate threat to an officer or others, such a use of deadly force against a fleeing suspect is objectively unreasonable.  *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Although the reasonableness of force is a factually intensive inquiry, our conclusion that there are disputed issues of material fact is supported by our decision in *Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999).  *Abraham* addressed whether an officer used excessive force when she shot a bullet through the side window of a moving car that was headed in the officer's general direction in a parking lot.  "[T]he undisputed facts [were that Abraham] had stolen some clothing, resisted arrest, hit or bumped into a car [while backing his car out of the parking lot], and was reasonably believed to be intoxicated."  *Id.* at 293.  Once he had successfully pulled his car out of the parking spot, Abraham started heading in the general direction of the police officer, Raso.  The parties, as in this case, disputed whether the officer was directly in front of the car or to the side of the car.  Largely because the bullet came through the side window, we held that a

---

[3] The District Court, noting that we have not specifically ruled on whether expert opinion can be used to demonstrate a police officer's reasonableness under qualified immunity, also refused to consider the report of plaintiffs' expert, Prof. McCauley, because it essentially offered his legal conclusion that Freebery's actions were objectively unreasonable.  Because the remaining admissible evidence is sufficient to survive summary judgment, we need not reach the issue of the admissibility of the expert's report.  However, we note our conflicting approaches to such evidence in the past.  On occasion, we have relied on experts' conclusions, including Prof. McCauley's, as relevant evidence regarding whether police conduct was reasonable under the Fourth Amendment.  *Compare Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005) (relying on expert's conclusions as relevant evidence regarding the reasonableness of police conduct), *with Carswell v. Borough of Homestead*, 381 F.3d 235, 243-44 (3d Cir. 2004) (discounting such expert testimony).

reasonable jury could conclude that the officer was on the side of the car and was not in imminent danger and, therefore, that her use of force was unreasonable. *Id.*

A jury in this case could make the same finding, particularly because several circumstances indicating that Abraham posed a risk are not present here. Abraham had already hit one car and was reasonably presumed to be intoxicated, strengthening the reasonableness of any officer's belief that while behind the wheel Abraham was a danger to the police officer, or others. We conclude that the facts in this case, viewed most favorably to the appellants, would permit a jury to find Freebery violated the Coudens' constitutional right.

We thus turn to the second qualified immunity question: whether the right in question was clearly established or, put differently, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness [in this context] is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "[T]here does not have to be precise factual correspondence between the case at issue and a previous case in order for a right to be clearly established . . . ." *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004) (quotations omitted). However, in a close case, "a broad general proposition" of the law will not serve to clearly establish to a reasonable officer that his conduct was unlawful. *Brosseau,* 543 U.S. at 198 (quotations omitted).

10

Our decision in *Abraham*, which was issued prior to the conduct in question, is sufficiently similar to the facts of this case so as to make it clear to a reasonable officer that his conduct, as described by the plaintiff-appellants, was unlawful. As discussed, *Abraham* held that it was unreasonable for an officer to fire a bullet into the side of the car even when the car had already hit another car and the driver was reasonably believed to be intoxicated. Accordingly, a reasonable officer would have known that throwing a flashlight into a moving car, which was not headed directly towards the officer, was equally if not more unreasonable under the law.[4]

With regard to Adam Couden's claim that Freebery used excessive force by restraining Tiffany while other officers arrested Adam, we affirm for substantially the reasons stated in the District Court's opinion—the facts, even when viewed most favorably to Adam, simply do not support the claim. Tiffany testified that Freebery initially restrained her for her "protection." App. at 326. Although upon seeing Adam she told the officers that he was her brother and to stop arresting him, she never testified that she tried to "assist[] Adam while the other Defendants assaulted Adam." Appellants'

---

[4] It is important to note that our decision denying qualified immunity is a limited one: qualified immunity is not warranted at the summary judgment stage in this case as to the flashlight claim. Because qualified immunity hinges, in large part, on a determination of the facts, it "remains a viable defense, though its applicability cannot be finally determined until after the facts have been [established] at trial." *Reedy v. Evanson*, 615 F.3d 197, 224 n.38 (3d Cir. 2010). To that end, we note that when a case involves several interrelated claims, some of which the district court believes should proceed to trial, judicial economy and the parties' interest in final resolution may suggest that the district court reserve judgment on the issue of qualified immunity, notwithstanding that it is an immunity from suit, in order to more fully develop the facts and avoid the multiple rounds of briefing and appeals that have taken this case nearly ten years to resolve.

11

Br. at 30.  Even assuming Tiffany was trying to free her brother, it would have been objectively reasonable for Freebery to prevent her from interfering while other officers made an arrest.[5]

## IV.

For the foregoing reasons, we will reverse the grant of summary judgment in favor of Freebery as to the excessive force claim related to the flashlight incident and remand for resolution by the jury of the disputed issues of material fact.  We affirm the grant of summary judgment in favor of Freebery as to Adam Couden's claim that Freebery used excessive force by restraining Tiffany Couden and in allegedly slamming the garage door into Adam.

---

[5] *Baker v. Monroe Twp.*, 50 F.3d 1186 (3d Cir. 1995), is not to the contrary.  In that case, we held that the defendant could be held personally liable for other officers' excessive force because the defendant both knew of the excessive treatment and was the supervisor.  Culpability was based on supervisory liability.  *Id.* at 1193-94.  Nowhere is it alleged that Freebery was in a supervisory position.  Appellants point to no case law that would clearly establish to a reasonable officer that his actions in restraining Tiffany were unlawful.  We also affirm the dismissal of Adam's claim that Freebery used excessive force in slamming the garage door into Adam while trying to open it.  Adam cites to nothing in the record indicating that Freebery was the officer who slammed the door into him.  Adam merely states that "this unknown officer could have been Freebery." Appellants' Reply Br. at 7.  Absent evidence indicating that it was Freebery, no jury could grant a verdict in Adam's favor.  Accordingly, the District Court properly granted summary judgment on this claim.